```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
FXROBOTT LLC, et al.,                                                :
                                                                     :
                          Plaintiffs,                                :
                                                                     :
             -v-                                                     :   25-cv-2264 (LJL)
                                                                     :
NOETIQ RESEARCH INC., et al.,                                        :   MEMORANDUM AND
                                                                     :        ORDER
                          Defendants.                                :
                                                                     :
---------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/28/2025

LEWIS J. LIMAN, United States District Judge:

Plaintiffs FXRobott LLC, Argand Technologies Corp., and Robott Corporation (collectively "Plaintiffs") moved for injunctive relief against Defendants Noetiq Research Inc., Henry Wilcox, Pixel Cloud Tech Solutions LLC, Patrick Black, Finnovation Technologies LLC, and Noah Applebaum (collectively "Defendants") in connection with their claims for breach of contract and violation of the Defend Trade Secrets Act. Dkt. No. 41. On June 18, 2025, the Court held an evidentiary hearing on the motion. The presentation of evidence concluded that same day. At the hearing, Defendants objected to Plaintiffs' Exhibit 18 and the Court reserved on the issue. Hearing Tr. at 76:14–22. Defendants now move to strike the exhibit. Dkt. No. 47. Plaintiffs oppose. Dkt. No. 49.

The exhibit in question is a non-disclosure agreement (the "NDA") purportedly executed by Argand Technologies Corp. and Nonparty Tappollo Media, LLC ("Tappollo Media") on February 20, 2025. Plaintiffs claim that the NDA covers the purported owners of Tappollo Media, Boon Chew and Frank Perez, who were shown the alleged trade secrets in this case. *Id.* at 2. The NDA undoubtedly should have been produced in response to Defendants' document requests. *See* Dkt. No. 47-2 at 8 (requesting "[a]ll documents that constitute, refer, or relate to any disclosure

by, or with the permission of, Plaintiffs of any Confidential Information and/or trade secret in Plaintiffs' Potential Product, to any third party, including the terms of that disclosure and any confidentiality agreement or nondisclosure agreement with the receiving party"). Nonetheless, Plaintiffs did not produce the NDA until 7:36 a.m. on June 18, 2025—less than an hour and a half before the evidentiary hearing began. Dkt. No. 47-6

Federal Rule of Civil Procedure 37(c) states that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c). In turn, Federal Rule of Civil Procedure 26(e) provides in relevant part that a party must supplement its document productions or interrogatory responses "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A). To determine whether to preclude evidence, courts look to four factors: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the [precluded information]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance." *Softel, Inc. v. Dragon Med. & Sci. Commc'ns, Inc.*, 118 F.3d 955, 961 (2d Cir. 1997) (citing *Outley v. City of New York*, 837 F.2d 587, 590–91 (2d Cir. 1988)); *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006). The Court reviews each factor in turn.

First, Plaintiffs offer a weak explanation of their failure to turn over the NDA at an earlier date. Plaintiffs' principal, Robert Del Grande, was deposed on May 29, 2025, and testified that he could not recall whether he had signed a non-disclosure agreement with Chew or Perez but that if

2

one existed, it would have been produced. Dkt. No. 47-5 at 62:7–14, 213:15–215:3. At trial, Del Grande testified that he was confused to hear that he had not produced any such documents and that "right after [his] deposition," he went back through his text messages with Chew and found the agreement with Tappollo Media. Hearing Tr. at 75:12–25. Del Grande testified that the document had not originally been produced because he had searched for relevant documents only in the send-and-receive software he had used for e-signatures. *Id.* There are reasons to question the reasonableness of that initial search. The NDA was purportedly executed on February 20, 2025. Dkt. No. 47-1. Defendants served the request for documents on April 11, 2025. Dkt. No. 47-2. If, as he testified, Del Grande was readily able to find the NDA immediately after his deposition, there is no reason he could not have searched for and found the document prior to the deposition, at a time when it could have been used. The importance—and the existence—of the document would have been readily apparent. Moreover, putting aside the question of the reasonableness of Plaintiffs' initial search for responsive documents, Del Grande's testimony still does not explain Plaintiffs' failure to produce the document until the morning of the hearing—nearly three weeks after his deposition.[1] Plaintiffs' opposition to the motion to strike offers no more explanation, stating simply that Plaintiffs' counsel did not receive the document until "the eve of the hearing" and, for unstated reasons, was "unable to send [it] until the morning of the hearing." Dkt. No. 49 at 1. Del Grande's failure to send the document to his counsel for several weeks is not the substantial justification demanded by Rule 37(c). "The duty to supplement applies whether the corrective information is learned by the client or by the attorney." *Colon v.*

---

[1] Del Grande's testimony also does not explain Plaintiffs' failure to identify Chew or Perez in response to Plaintiffs' eighth and ninth interrogatories which respectively sought the names of witnesses with knowledge of Plaintiffs' attempts to continue the development, marketing, sale, or license, of the software product at issue after Defendants' termination and the names of witnesses with knowledge of Plaintiffs' attempts to evaluate the status of the software. Dkt. No. 47-4 at 4.

3

*N.Y.C.H.A.*, 2021 WL 2159758, at *11 (S.D.N.Y. May 26, 2021) (quoting *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)); *see also* Fed. R. Civ. P. 26(e) Advisory Committee Notes to 1993 Amendment.

Second, the NDA is highly relevant to Plaintiffs' trade secret claim as it bears upon the issue of unprotected disclosure of a supposed trade secret. *See Town & Country Linen Corp. v. Ingenious Designs LLC*, 556 F. Supp. 3d 222, 258 (S.D.N.Y. 2021) ("[W]here there is no genuine dispute that the party claiming misappropriation disclosed its trade secret to others who are under no obligation to protect the confidentiality of the information its property right is extinguished." (quotation omitted)).

Third, Defendants were prejudiced by the surprise exhibit. "The purpose of Rule 26 is to prevent the practice of 'sandbagging' an opposing party with new evidence." *Kelly v. Beliv LLC*, 2024 WL 1076217, at *5 (S.D.N.Y. Mar. 12, 2024) (quotation omitted). Yet that is precisely what occurred here—Plaintiffs' failure to produce the NDA in a timely manner prevented Defendants from seeking discovery concerning the authenticity and scope of the agreement including whether it does, in fact, bind both Chew and Perez. In particular, although Del Grande testified at the evidentiary hearing that Chew and Perez co-own Tappollo Media and thus are both bound by the NDA, Hearing Tr. at 75:2–6, at his deposition, Del Grande was asked to state the relationship between Chew and Perez and testified merely that "[t]hey are both in similar spaces and Frank's background is more in machinery" without mentioning that they co-owned a business. Dkt. No. 47-5 at 64:22–24. Plaintiffs' failure to produce the NDA in a timely manner prevented what may have been fruitful discovery as to the true nature of Chew and Perez's relationship to one another, to Tappollo Media, and to the NDA.

The fourth factor is less straightforward. The fourth *Softel* factor "requires the Court to consider the appropriateness of granting a continuance, rather than defaulting to the harsh remedy of dismissal." *Peerless Network, Inc. v. AT&T Corp.*, 2022 WL 3700141, at *6 (S.D.N.Y. Aug. 26, 2022) (quotation omitted). The Second Circuit instructs that "[b]efore the extreme sanction of preclusion may be used by the district court, a judge should inquire more fully into the actual difficulties which the violation causes, and must consider less drastic responses." *Outley*, 837 F.2d at 591. If the Court were to permit Plaintiffs to rely on the NDA, the Court would have to give Defendants the opportunity to take discovery into the authenticity, meaning, and reach of the NDA. Granting a continuance for that purpose is feasible for Plaintiffs' request for a permanent injunction, but not for Plaintiffs' motion for a preliminary injunction. There is no effective and practicable remedy other than preclusion with respect to Plaintiffs' motion for a preliminary injunction. Trial on that motion is concluded. The request with respect to a permanent injunction stands on different footing. That request was consolidated with the hearing on the motion for a preliminary injunction for the convenience of the parties. Dkt. No. 36. It would not present a significant burden to the Court or the parties to reopen the trial on the request for a permanent injunction for the limited purpose of permitting Plaintiffs to offer the NDA and Defendants to offer any evidence they elicit in discovery with respect to that document.

Plaintiffs are entitled to re-depose Del Grande with respect to the NDA. The prejudice to Defendants of having to re-depose Del Grande can be cured by permitting Defendants to take the deposition of Del Grande at Plaintiffs' expense. Similarly, the prejudice to Defendants of attending another evidentiary hearing to address the NDA can be cured by requiring Plaintiffs to bear the expense of the hearing. Such relief is necessary and appropriate to address Plaintiffs'

discovery violation. To the extent that Defendants seek to take other discovery with respect to the NDA, such discovery will be at Defendants' expense.

## CONCLUSION

The Court grants Defendants' motion to strike the NDA from the record before the Court on Plaintiffs' motion for preliminary injunctive relief.

At closing argument on July 1, 2025, Plaintiffs shall be prepared to inform the Court whether they wish to proceed with limited discovery into the NDA including (a) bearing the expense of Defendants' supplemental deposition of Del Grande, which shall be no more than four hours long, and (b) bearing the expense of a supplemental hearing for the limited purpose of addressing the NDA. The expenses would be limited to the reasonable costs of the deposition and the reasonable attorney's fees incurred in taking the deposition and attending the hearing (including travel to and from the deposition and hearing) but not the attorney's fees incurred in preparation for the deposition or hearing.

SO ORDERED.

Dated: June 28, 2025
      New York, New York

_____
              LEWIS J. LIMAN
            United States District Judge